**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 17-518** |
| **BRYANT CALLOWAY**<br>**SEAN GILLIAM** | : | |

## GOVERNMENT'S OMNIBUS RESPONSE TO DEFENDANTS' PRETRIAL MOTIONS

The United States of America, by and through its attorneys, William M. McSwain, United States Attorney for the Eastern District of Pennsylvania, and Jonathan B. Ortiz and Seth Schlessinger, Assistant U.S. Attorneys, files this response to the defendants' pretrial motions. The defendants have moved for an Order from this Court to suppress the evidence recovered by way of a search warrant. The government herein provides its response to the defendant's motions and sets forth the following:

### Procedural Background

The defendants were indicted in this case on September 27, 2017. That indictment charges a years-long crack cocaine distribution conspiracy, substantive acts of distribution of crack cocaine, distribution of crack cocaine within 1,000 feet of a protected location and several firearms offenses, including a murder committed by Calloway.

On or about April 23, 2018, the defendants filed several pretrial motions relating to the search warrant, the charges in the indictment, discovery and other disclosure obligations. The government responded on May 7, 2018. Doc. No. 77. On May 16, 2018, the Court issued an amended scheduling order which permitted counsel to file additional pretrial motions. Doc.

1

No. 82.   In response defendants Gilliam and Calloway filed supplemental motions to suppress.

Doc. Nos. 99 and 102.   The government herein responds as follows:[1].

## Memorandum of Law

## I.        Motion to Suppress Search Warrant – Doc. Nos. 99 and 102.

Defendant Calloway moves to suppress the fruits of the Philadelphia Police Department's search of 5111 Funston Street on August 7, 2013. Doc. No. 99.   Defendant Gilliam moves to suppress the physical evidence recovered from the Philadelphia Police Department's search of 5111 Funston Street on August 7, 2013, all evidence seized from all search warrants executed by the ATF on May 7, 2015, and all evidence seized from the search warrants executed on October 17 and 18, 2017.   Doc. No. 102.   The contested searches were conducted pursuant to valid search warrants, issued by neutral and detached magistrates who found probable cause, and upon which search warrants the agents and officers relied in good faith.   For the reasons that follow, the defendants' motions should be denied.

A.        The defendants' motions fail to allege, let alone establish, the required standing, and should be denied on that basis.

As a threshold matter, the burden is on every defendant to show that he or she personally has standing to contest the searches; i.e., that he has a reasonable expectation of privacy in both the places that were searched and items seized.   Rawlings v. Kentucky, 448 U.S. 98, 104-05 (1980); Rakas v. Illinois, 439 U.S. 128, 134 (1978); United States v. Acosta, 965 F.2d 1248, 1256 n.9 (3d Cir. 1992) ("The proponent of a motion to suppress has the burden of establishing that his Fourth Amendment rights were violated.") (citing Rakas).   A defendant may not assert that a search violated his Fourth Amendment rights unless the defendant adequately establishes

---

[1] The government hereby also requests to incorporate by reference into its response its prior filing, Doc. No. 77.

that the defendant possessed the requisite reasonable expectation of privacy, and therefore has standing to allege the constitutional violation.   See, e.g., United States v. Stearn, 597 F.3d 540, 551 (3d Cir. 2010).   Unless he so proves, it is unnecessary for the court to conduct any Fourth Amendment analysis of the propriety of the law enforcement officers' actions in this case as to that defendant.   Standing is always an issue when a defendant asks a court to undergo a Fourth Amendment analysis.

The Supreme Court has adopted a two-part test to determine whether a person's expectation of privacy under the Fourth Amendment is legitimate.   First, the claimant must have a subjective expectation of privacy in the place or thing searched.   Katz v. United States, 389 U.S. 347, 361 (1967).   Second, the expectation of privacy must be one that society is willing to recognize as objectively reasonable.   Id.

A person is not permitted to make a vicarious claim of standing.   To the contrary, the Supreme Court has emphasized that "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted."   Rakas, 439 U.S. at 133-34 (quoting Brown v. United States, 411 U.S. 223, 230 (1973)).   Thus, it is well settled that one must show that it is his or her personal expectation of privacy that has been violated.   United States v. Salvucci, 448 U.S. 83, 86-87 (1980).   The United States does not concede the issue of standing as to any defendant in any search, and thus expects the defense to properly address this issue and assume this burden. See United States v. Baker, 221 F.3d 438, 441-43 (3d Cir. 2000).

    1.   Calloway's Motion to Suppress

Calloway seeks to suppress the fruits of the search of 5111 Funston Street, on August 7, 2013.   The defendant's motion should be denied for failing to allege standing.   Here, the

defendant's motion at no point alleges that the place of the search was his home or that he had an expectation of privacy. Calloway fails to state any basis for the Court to find that he had an expectation of privacy in 5111 Funston Street. Indeed, Calloway does not proffer a single fact or allegation to support the Court finding that he had any connection whatsoever to the searched location. This insurmountable failure in his pleading is likely due to the fact that the weapons used to murder Brian Littles were recovered from this search, making Calloway understandably reluctant to claim any connection to the location. However, his failure to adequately establish – or even to claim – a legitimate expectation of privacy in the location is fatal to his motion. The defendant cannot rely upon the government's theory of the case or proffered trial proof to bootstrap a claim of standing. <u>Salvucci</u>, 448 U.S. 86-87. As the defendant has failed to allege standing, the Court's analysis of the sufficiency of the affidavit and/or <u>Franks</u> concerns is foreclosed. The defendant's motion must be denied.

### 2. Gilliam's Motion to Suppress

Defendant Gilliam seeks to suppress "all evidence and items seized during the course of this investigation." Doc. No. 102, pg. 1. The defendant's motion is overbroad and, more problematically, is legally insufficient for its failure to allege or demonstrate standing. Gilliam has essentially filed two separate motions to suppress the evidence from search warrants. Regarding standing, the government will address each motion separately.

### a. Doc. No. 63.

In his initial motion to suppress, Doc. No. 63, the defendant seeks to suppress the evidence recovered from 5035 Funston Street on May 7, 2015. However, the defendant fails to clearly allege standing and thus his motion must be denied.

Gilliam's puzzling motion simultaneously claims both a connection to, and no connection with, 5035 Funston Street. First, in paragraph 3, Gilliam states, "Sandra Gilliam, and her son, defendant Sean Gilliam were home at the time of the search." Doc. No. 63, para. 3. Were his motion to stop there, he likely could be found to have alleged standing, implicitly claiming that Gilliam lived at 5035 Funston. However, Gilliam then continues in the rest of his motion to deny any connection to 5035 Funston Street. First, Gilliam states that "the government alleges defendant Gilliam resides" at the location. Id., para. 8, emphasis added. This statement is insufficient. As noted above, vicarious claims of standing are insufficient. Salvucci, 448 U.S. 86-87. As discussed above, the defendant – not the government – bears the burden of establishing standing to contest the legality of a search. He then continues his argument against a connection to 5035 Funston by stating that the single instance of surveillance of Gilliam at 5035 Funston was six months prior, and thus stale. Id., para. 9 &10. He continues to argue against his own standing in the location by stating that the informant's observations of Gilliam at 5035 Funston were also dated and thus unreliable to connect him to the location. Id., paras. 11 - 15. Confusing his argument about standing even more, he at one point advances information in support of a connection to another location – 5116 Funston Street. Doc. No. 63, para. 7. In short, were the Court to credit all of Gilliam's claims, the Court would have no choice but to grant Gilliam's apparent concession that he lacked standing to contest a search at 5035 Funston. In any event, the effect of Gilliam's many contradictory allegations is to fail to allege an adequate expectation of privacy in 5035 Funston. As he does not meet his burden of establishing standing, his motion must be denied.

b.   Doc. No. 102.

In his supplemental motion, Doc. Nos. 100 and 102, Gilliam moves to suppress the

evidence recovered from several different search warrants, effectively making the implausible

claim that he simultaneously resided in or otherwise maintained a reasonable expectation of

privacy in at least 31 different locations in West Philadelphia.   Because he fails to allege

standing in *any* of the places searched, his motion must be denied.

Gilliam's motions at Doc. Nos. 100 and 102 are, somehow, even less specific regarding

standing than his motion at Doc. No. 63.   Despite filing a memorandum that extends over 16

pages, Gilliam fails to state any connection whatsoever to any search location.   Were that not

problematic enough, Gilliam seeks to suppress the results from searches conducted on August 7,

2013, May 6, 2015, October 11, 2017 and October 18, 2017, (Doc. No. 102, pg. 16) without

stating which specific searches he has standing in.   Indeed, the only physical location that he

even describes by name is the August 7, 2013, search of 5111 Funston Street.   However, there

he only makes mention of codefendant Calloway's connection to the location.   He provides no

statement whatsoever even approaching his own standing to contest the search.   The failure to

allege standing in any search location is all the more egregious considering that the searches on

the challenged dates covered 22 different physical locations on May 6, 2015, 7 different physical

locations on October 18, 2017, and locations on each of August 7, 2013 and October 11, 2017.

Gilliam woefully fails to allege standing in the 31 separate locations at which the searches were

conducted, and as a result his motion should be denied without further analysis from the Court.

Establishing standing to contest the search of a location is not a difficult barrier to pass.

Gilliam and Calloway simply need to allege and submit facts that support a claim of "I have a

reasonable expectation of privacy in a particular search location because . . . ."   Did Gilliam live at 5035 Funston or not?   Did Calloway live at 511 Funston or not?   Does either Gilliam or Calloway have a reasonable expectation of privacy in *any* search location and why?   The defendants bear the burden of providing answers to those simple questions, but have failed to meet that burden.   Since the motions are defective in that regard, the Court should conserve its own resources and refuse to inquire into the sufficiency of the search warrant affidavits.   Demonstrating standing is a threshold showing and a basic requirement in 4th Amendment analysis.   Until the defendant sets forth a basis for "a subjective expectation of privacy" in any location, his motion must be denied.   While the defendants may have been able to establish standing in some search location, if they wanted to, it is their threshold burden to do so.   The defendants failed to present information that they have standing and their motions must be denied.

   B.   The searches were authorized by valid warrants, and there are no material false statements or omissions requiring a <u>Franks</u> hearing.

   The contested searches were authorized by a court of competent jurisdiction, who issued a valid search warrant, supported by oath, and by probable cause.   The affidavit for the search warrant sets forth probable cause for the premises to be searched, the items to be found, and evidence of criminal activity.   The search warrants issued were facially valid.   Thus, the searches were legal, and the evidence recovered from the premises should be admitted at trial as lawfully obtained.

   Both Gilliam and Calloway claim that the warrants issued by the Court were not supported by probable cause, and further request a <u>Franks</u> hearing.   Both motions fail because of their failure to meet their burden under <u>Franks</u> even to be entitled to a hearing, let alone to

7

establish that any false statements or misleading omissions concealed a failure of probable cause supporting issuance of the warrants. Moreover, these challenges do nothing to detract from the affidavits' facts supporting probable cause nor do they detract from the agents' good faith reliance on the Courts' determinations of probable cause. As a result the defendants' motions should be denied.

        1.   The legal requirements for a <u>Franks</u> hearing have not been satisfied.

There are no material false statements or omissions in the affidavit supporting the search warrant. The defendant's attempt at manufacturing <u>Franks</u> violations are erroneous, misplaced, and contrived. As a result, the motions for a <u>Franks</u> hearing are baseless and should be denied.

In <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), the Supreme Court determined that a criminal defendant has the right to challenge the truthfulness of factual statements made in an affidavit of probable cause supporting a warrant, if the defendant can make the requisite preliminary showing. <u>Id</u>. at 155-56; <u>United States v. Yusuf</u>, 461 F.3d 374, 383 (3d Cir.2006). The Third Circuit has extended this right to permit challenges based on factual omissions from the warrant affidavit. <u>Id</u>. at 383; <u>Wilson v. Russo</u>, 212 F.3d 781, 787 (3d Cir.2000). In <u>United States v. Heilman</u>, 377 F. App'x 157 (3d Cir. 2010), the Third Circuit set forth a comprehensive, instructive primer for when, how, and under what circumstances courts should conduct <u>Franks</u> hearings. The Third Circuit stated:

> The preliminary-showing requirement is intended to "prevent the misuse of a veracity hearing for purposes of discovery or obstruction. <u>Franks</u>, 438 U.S. at 170-71. To obtain a <u>Franks</u> hearing, the defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." <u>Franks</u>, 438 U.S. at 155–56; <u>Yusuf</u>, 461 F.3d at 383. To meet this threshold, a challenger must present more than conclusory statements that the affidavit contains false statements or omissions. <u>Franks</u>, 438 U.S. at

171; <u>Yusuf</u>, 461 F.3d at 383, n. 8. The challenger must specifically identify allegedly false statements or omissions in the affidavit and provide a statement of reasons supporting the argument. <u>Franks</u>, 438 U.S. at 171, 98 S. Ct. 2674. The challenger must also provide an offer of proof or give a satisfactory explanation for the absence of proof. <u>Id.</u> Sworn affidavits or reliable statements from witnesses are examples of offers of proof sufficient to satisfy the substantial preliminary showing. <u>Id</u>; <u>Yusuf</u>, 461 F.3d at 383, n. 8. When demonstrating that the affiant omitted a material fact or included a false statement with the requisite *mens rea,* it is insufficient to prove the affiant acted with negligence or made an innocent mistake. <u>Yusuf</u>, 461 F.3d at 383.

<u>United States v. Heilman</u>, 377 Fed.Appx. 157, 1777 (3d Cir. 2010) (parallel citations omitted).

This does not mean "that every fact recited in the warrant affidavit [must] necessarily [be] correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." <u>Id.</u> at 165. As the <u>Franks</u> Court recognized, to be successful, a defendant must point to something more than just innocent errors and muddled facts in the affidavit. <u>Id.</u> at 171-72.

That "something more" has long been memorialized in a two-part test, each part of which must be proven by a preponderance of the evidence. <u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 399 (3d Cir. 1997); <u>United States v. Calisto</u>, 838 F.2d 711, 714 (3d Cir. 1988). First, the defendant must prove that the affiant "knowingly and intentionally, or with reckless disregard for the truth," made false or misleading statements in the warrant affidavit. <u>Sherwood</u>, 113 F.3d at 399. Second, he must demonstrate that these statements were material, or necessary to the finding of probable cause. <u>Id.</u> at 399. When both factors are present, the Fourth Amendment requires exclusion of the fruits of the search just as though probable cause was lacking on the face of the warrant itself. <u>United States v. Frost</u>, 999 F.2d 737, 742-43 (3d Cir. 1993) (citing <u>Franks</u>, 438 U.S. at 155-56). This test applies whether the defendant challenges affirmative misstatements or

omissions made by the government.   Sherwood, 113 F.3d at 399.

Before a defendant can establish this at a hearing, however, he must first make "a substantial preliminary showing that a false statement was knowingly and intentionally, or with reckless disregard for the truth, ... included by the affiant in the warrant affidavit."   Franks v. Delaware, 438 U.S. at 155-56.   In order to make a substantial preliminary showing, "a defendant must come forward with `allegations of deliberate falsehood or of reckless disregard of the truth, and those allegations must be accompanied by an offer of proof.'"   United States v. Harvey, 2 F.3d 1318, 1323 (3d Cir. 1993) (quoting Franks v. Delaware, 438 U.S. at 171).   Vague or conclusory allegations of falsity or reckless disregard are insufficient.   Harvey, 2 F.3d at 1323-24 (defendant's failure to offer contradictory evidence to affidavit's factual assertions did not satisfy offer of proof requirement).

Thus, if "the defendant makes the requisite substantial showing for a Franks hearing and then, at that hearing, shows by a preponderance of the evidence that material statements in the affidavit are either recklessly or intentionally untruthful, the fruits of the search must be excluded unless the remaining content of the warrant is sufficient to establish probable cause."   United States v. Brown, 3 F.3d 673, 676 (3d Cir. 1993).

In this case, defendants have failed to make a substantial preliminary showing that they are entitled to a Franks hearing.   They have not demonstrated that the affiant knowingly and intentionally, or with reckless disregard, included false information in the affidavit.   As each defendant advances a slightly different argument, each will be addressed separately

a.   Calloway's Motion to Suppress

Calloway's claim that he is entitled to a Franks hearing on the search of 5111 Funston

Street is meritless.   The defendant fails to make a substantial showing of a deliberate falsehood or reckless disregard for the truth and provides no offer of proof.   As such his motion requesting a hearing is legally insufficient and it should be denied.

Calloway's argument for a Franks hearing states in its entirety, without explanation or further information, that

> At the time of the search warrant application, the source was known by police to be corrupt.   Police did not reveal this information to the judicial authority approving the warrant. Therefore, the warrant does not reflect all information known to police for the judicial authority to determine the reliability of the informant.   The affidavit of probable cause was therefore made in reckless disregard for the truth.

> Doc. No. 99, paras. 3 & 4.

The defendant's motion is therefore insufficient to justify a Franks hearing and his request should be denied.   As noted above a defendant requesting a Franks hearing must make "a substantial preliminary showing that a false statement was knowingly and intentionally, or with reckless disregard for the truth, ... included by the affiant in the warrant affidavit."   Franks v. Delaware, 438 U.S. at 155-56.   In order to make a substantial preliminary showing, "a defendant must come forward with 'allegations of deliberate falsehood or of reckless disregard of the truth, and those allegations must be accompanied by an offer of proof.'"   United States v. Harvey, 2 F.3d 1318, 1323 (3d Cir. 1993) (quoting Franks v. Delaware, 438 U.S. at 171).   Vague or conclusory allegations of falsity or reckless disregard are insufficient.   Harvey, 2 F.3d at 1323-24 (defendant's failure to offer contradictory evidence to affidavit's factual assertions did not satisfy offer of proof requirement).   Here, Calloway provides no support, much less a substantial showing, of false information or reckless disregard for the truth.   Moreover, Calloway's motion

11

offers no offer of proof as to his allegation. To his credit, Calloway does attach several documents that were provided in discovery as exhibits but provides absolutely no analysis or explanation of them much less explain how they meet his burden of proof. Finally, even though it is clear that vague and conclusory allegations are insufficient, Harvey, 2 F.3d at 1323-24, Calloway's motion is the epitome of a vague and conclusory allegation. A bald and unsupported statement of falsehood or reckless disregard is insufficient. Therefore, Calloway fails to meet every single requirement of him in order to justify a Franks hearing and his motion should be denied.

b. Gilliam's Motion to Suppress

Gilliam requests that this Court order a Franks hearing on every search conducted in this investigation – a total of over 30 separate searches. His motion should be denied. His motion is at the same time overbroad, in that it contests every single search, and at the same time unspecific in that it fails to allege proper grounds for a hearing on any one search – let alone all of them. The defendant's motion spends significant time arguing about the veracity of the information – claiming falsities and agents' supposed reckless disregard for the truth. However, the motion misstates the facts of the case, misrepresents the information contained within the affidavits, and takes items of information out of context and timeline. In fact, Gilliam has conflated timelines and information, from a hindsight view, in a failed attempt to suggest to the Court that the warrants were based upon false evidence or information. This argument is flawed in several significant respects.

First, Gilliam contends that Detective Ronald Dove, the affiant for the search of 5111

Funston Street on August 7, 2013, was prosecuted for an offense[2] and thus is unreliable. He also contends that Raymond Thompson, who previously was used as a confidential informant in connection with the 2013 and 2015 warrants, was prosecuted[3] for providing false statements to law enforcement and thus is unreliable. Gilliam would have the Court conclude that the warrants were based on tainted information. This claim is demonstrably false for multiple reasons. Although both Dove and Thompson were prosecuted for offenses, those prosecutions and the conduct underlying them 1) had no connection to the searches in this case or the information which resulted in the issuance of the warrants leading to those searches, and 2) occurred years <u>after</u> their involvement in these searches.

Here the searches at issue occurred in August 2013, May 2015, and October 2017. Gilliam does not provide, because he cannot, "a substantial preliminary showing that a false statement was knowingly and intentionally, or with reckless disregard for the truth", <u>Franks v. Delaware</u>, 438 U.S. at 155-56, presented in any of the affidavits. He cannot make this showing because the 2013 and 2015 searches occurred years <u>before</u> what he alleges are demonstrations of falsity in statements made by the affiant and informant. For example Detective Dove's information was only involved in the 2013 search of 5111 Funston Street. Dove was later arrested, in 2015, for a crime. Following his involvement in the 2013 search of 5111 Funston Dove had no connection or involvement whatsoever to the 2015 or 2017 searches. Gilliam gives no explanation for how the later conduct (the 2015 criminal conduct) relates back to the

<hr>

[2] Detective Ronald Dove was arrested on January 22, 2015, for obstruction, hindering prosecution, and related offenses. Phila. Court of Common Pleas, CP-51-CR-0001382-2015. Detective Dove pled guilty to the offenses on April 26, 2017.
[3] Raymond Thompson was charged on June 21, 2017, for providing false statements to law enforcement. EDPA Crim. No. 17-325. The charges surrounded conduct that occurred between on or about August 12, 2016 and August 22, 2016. Thompson pled guilty to the offense.

2013 search and makes Dove's statements false.   Moreover, since Dove was not involved in the 2015 and 2017 searches, and his information was not relied upon in those affidavits, there cannot possibly be a showing that his conduct somehow tainted the later affidavits in which he had no involvement.

Similarly, information provided by Thompson was submittedin connection with the 2013 and 2015 searches.   Thompson engaged in criminal conduct in 2016 and was prosecuted. Again, here, Gilliam provides no explanation for how the 2016 crime establishes that the statements in 2013 and 2015 were false.   Moreover, following the revelation of his 2016 criminal conduct, Thompson was not used as an informant again and therefore had no part whatsoever in the 2017 searches.   Because he was not involved in the 2017 searches, and he was not used as an informant in support of those later affidavits, his 2016 criminal conduct cannot call into question the 2017 searches.

Gilliam's argument is thus completely unfounded and nothing more than a lengthy misrepresentation of the history of the case and events.   As a result Gilliam, understandably, provides no explanation whatsoever as to how a person's conduct years after the fact, means that the person provided false information years prior to the incident.   Gilliam's motion is based entirely on a theory that "once a person is shown to be a liar. . . then everything that person ever said prior to that lie must have also been a lie too."   Gilliam offers no evidence to support this theory, and his argument, flawed and completely illogical, must therefore be rejected.

Second, to the extent that Gilliam points to specific information events that were left out of the affidavit, his motion is belied by the actual information provided in the affidavits. Gilliam is simply factually wrong about what information was given to the reviewing court and

provides vague and conclusory statements about the material. For instance, on pages 3 through 5, Gilliam discusses information provided by Thompson to Dove about the murder of Brian Littles. Without support, or factual proffer, or any explanation, Gilliam simply says "this was a complete falsity that was told by Thompson" and "this statement was completely fabricated. . .", Doc. No. 201, pg. 5, and "this never happened." Id., pg. 6. As noted above vague or conclusory allegations of falsity or reckless disregard are insufficient. Harvey, 2 F.3d at 1323-24 (defendant's failure to offer contradictory evidence to affidavit's factual assertions did not satisfy offer of proof requirement). More problematic for his motion, from his vague and conclusory allegations Gilliam then leaps to another separate conclusion that Dove, and the ATF in later affidavits, allegedly performed an insufficient investigation and failed to corroborate information. See Doc. No. 102, pg. 6 and 8 - 9. However, first, the length of an investigation has no connection to whether the information derived from that investigation was knowingly false. Gilliam fails to explain his position to the contrary. Second, Gilliam's belief on what constitutes a sufficient investigation is irrelevant – the judge to whom the information was presented, and determined it to be sufficient, is what controls. Here, the judge found the investigation, information and corroboration to be sufficient and his determination is entitled to substantial weight[4].

Confusing matters further, Gilliam claims that this allegedly false information was

---

[4] A judge's determination of probable cause is to be accorded great deference. Gates, 462 U.S. at 236; United States v. Conley, 4 F.3d 1200, 1204-05 (3d Cir. 1993) (speaking to a magistrate judge's determination of probable cause); United States v. Tehfe, 722 F.2d 1114, 1117-20 (3d Cir. 1983) (state court judge's determination of probable cause is given the same deference). As such, a reviewing court need not determine whether probable cause actually existed. United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (citing United States v. Jones, 994 F.2d 1051, 1054 (3d Cir. 1993)). Rather, its task is to determine whether the affidavit submitted provided a "substantial basis" for finding probable cause." Id. (internal quotations omitted); accord Whitner, 219 F.3d at 296; United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993); Jones, 994 F.2d at 1057.

presented to the grand jury, taints all of the evidence, and taints the indictment in this case. Doc. No. 102, pgs. 8 & 9. Gilliam provides no explanation for these statements which are misplaced in the context of a motion to suppress a search warrant. If Gilliam intends to challenge the sufficiency of the grand jury presentation or allege misconduct within the grand jury, he must file a separate pleading to that effect rather than disguising such a claim as a motion to suppress evidence.

In attempting to present Thompson as untruthful, and the agents as having a reckless disregard for the truth, Gilliam claims that information was purposefully omitted from the affidavit in order to hide the truth from the reviewing judge. As he did in Doc. No. 63, Gilliam claims that the affidavit failed to include information about an informant's attempt to buy drugs and instead was sold counterfeit drugs. However, Gilliam fails to explain why this information would need to be presented to the reviewing judge, or would be relevant to the probable-cause determination. The sale at issue in the recent filing concerned a separate defendant, James Wilson, selling alleged crack to an informant out of a public bar – a location that was not requested to be searched in the investigation. Wilson was not a co-conspirator of Gilliam and the event had nothing to do with any searched location. As an initial matter, Gilliam fails to explain why the information would be relevant to the probable cause to search other places. Secondly, Gilliam fails to explain how an informant, acting at an agent's direction while equipped with audio and video recording equipment, being scammed out of money shows that the informant was providing false information. Even more important than that failure, Gilliam fails to explain how the absence of that information from the affidavit is a reckless disregard for the truth. Gilliam again attempts to confuse the issues by implying some concerted effort by the

agents to deceive the Magistrate when nothing could be further from the truth.

Stated simply, Gilliam has not made a "substantial preliminary showing of the affiant's reckless or intentional disregard for the truth." Brown, 3 F.3d at 679. Accordingly, as in Brown, a hearing is not warranted. As to the searches in this case, the defendant has utterly failed to meet the "preliminary showing" requirement that material false statements or omissions were recklessly made. At best, his motion confuses issues, misrepresents the evidence, and mischaracterizes the history and nature of the investigation. Thus, the motion should be denied without a Franks hearing.

Moreover, even had material misstatements been included in the search warrant affidavits, the proper remedy under Franks would simply be to remove or correct the offending statement and determine whether probable cause remained following the correction. United States v. Brown, 631 F.3d 638, 641 (3d Cir. 2011); Herrold, 962 F.2d at 1138. Likewise, if a material omission is found to have occurred, then the remedy is for the Court to add the alleged omission, then determine if probable cause still existed with the inclusion of the omitted information. If performed in this case, that analysis would demonstrate that the 151-page affidavit of probable cause, supported by corroboration and the training and belief of the agents was far more than sufficient to demonstrate probable cause supporting the requested search warrants. In any event, in this case there were neither material misstatements nor omissions. Thus, the defendant is not entitled to a Franks hearing, and his motion must be denied.

      2.    The voluminous information demonstrates probable cause in support of the challenged search warrants.

Gilliam and Calloway present little argument in support of their claim of lack of probable cause. Calloway's argument, to the extent it is set forth in his motion, revolves around the

credibility of the informant and affiant.    As discussed above, those arguments fail and his resulting argument about the sufficiency of the affidavit likewise fails.    Gilliam on the other hand, set forth in greater detail his argument about probable cause.    Critically, however, he fails to explain which searches he is challenging, provides no specifics of the lacking information (other than what is addressed above), and provides no argument for how the entire affidavits or each separate search falls below probable cause.    The defendants' deficiencies are likely due to the fact that the affidavits are long, detailed, corroborated, and set forth a great deal of evidence concerning a number of various crimes, based on a variety of sources.    The information was presented to judges who found that the information established adequate probable cause.    As to the 2013 search, the judge reviewed the information and found that it satisfied the relatively low threshold of probable cause.    The information was recent, specific and came from a source known to the police. As to the 2015 and 2017 affidavits, because the many crimes catalogued were continuing offenses that occurred over the course of many years, the judges properly concluded that the information presented, as a whole, under the totality of the circumstances, amounted to probable cause.

Probable cause is a "fluid concept" and the inquiry turns on "the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules."    Illinois v. Gates, 462 U.S. 213, 232 (1983).    In determining whether a warrant should be issued, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision, whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."    New York v. P.J. Video Inc., 475 U.S. 868, 876 (1986) (quoting Jones v. United States,

362 U.S. 257, 271 (1960)); United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000).

A judge's determination of probable cause is to be accorded great deference. Gates, 462 U.S. at 236; United States v. Conley, 4 F.3d 1200, 1204-05 (3d Cir. 1993) (speaking to a magistrate judge's determination of probable cause); United States v. Tehfe, 722 F.2d 1114, 1117-20 (3d Cir. 1983) (state court judge's determination of probable cause is given the same deference). As such, a reviewing court need not determine whether probable cause actually existed. United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (citing United States v. Jones, 994 F.2d 1051, 1054 (3d Cir. 1993)). Rather, its task is to determine whether the affidavit submitted provided a "substantial basis" for finding probable cause." Id. (internal quotations omitted); accord Whitner, 219 F.3d at 296; United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993); Jones, 994 F.2d at 1057. In conducting this analysis, the Court is confined to the facts presented to the reviewing judge, "i.e., the affidavit, and [does] not consider information from other portions of the record." Hodge, 246 F.3d at 305 (quoting Jones, 994 F.2d at 1055).

When scrutinizing the warrant, courts must consider the supporting affidavit as a whole and read it in a common sense and nontechnical manner. United States v. Williams, 124 F.3d 411, 420 (3d Cir. 1997). "The resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Gates, 462 U.S. at 238.

Direct evidence linking the place to be searched to the criminal activity is not required to establish probable cause. Hodge, 246 F.3d at 305; Whitner, 219 F.3d at 297; Conley, 4 F.3d 1200 at 1207; Jones, 994 F.2d at 1056. "[P]robable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for

concealment and normal inferences about where a criminal might hide evidence of a crime." Id (quoting Jones, 994 F.2d at 1056) (internal quotation marks omitted); United States v. Jackson, 756 F.2d 703, 705 (9th Cir.1985)).

When examining the nature of the place to be searched, courts likewise have recognized that, with respect to drug dealers, evidence of their involvement in the drug trade is likely to be found where the dealers reside even if no drug trafficking was observed to occur there. See United States v. Whitner, 219 F.3d 289, 297-98 (3d Cir. 2000) (collecting cases); and United States v. Burton, 288 F.3d 91, 103 (3d Cir. 2002) (in drug cases, evidence is likely to be found where drug dealers reside).

Here, the defendants have each failed to articulate a lack of probable cause. Their motions are devoid of facts or sound arguments tending to invalidate the judicial determinations of probable cause, and further lack any specificity as to which searches were not supported by probable cause and why. If the defendant cannot meet his burden at presenting an argument and facts, the government will not perform that role for him.[5] As a result, the government will not speculate as to the defendant's arguments and will not burden the Court with a complete recitation of the over 200 pages of supporting facts set forth in the various search warrant affidavits, which affidavits are naturally available for the Court's review. It is difficult to make generalizations about such a vast quantity of detailed and specific evidence. However, as a general matter, that the Court may observe that many, if not all, of the searches were based upon

---

[5] Since the defendant failed to provide an argument for which specific search location he is challenging, the government has not separately addressed the sufficiency of the probable cause supporting the search each and every one of the over 30 locations, which evidence was exhaustively recounted in the affidavit submitted in support of the warrants. Should the Court seek to examine the probable cause supporting the search of any location(s) in particular, the government would seek leave to address, in specificity, the probable cause relevant to the particular locations at issue.

some of the following forms of evidence:

- Information obtained from reliable confidential sources that provided recent specific information and a basis for their knowledge;

- Corroborating information for the information from confidential sources

- Observations by law enforcement surveillance officers of the targets at many of the search locations;

- Observations by law enforcement officers of the targets appearing to be engaged in selling controlled substances in or near to the search locations;

- Controlled purchases of drug from the targets of the investigation on the street and out of the search locations;

- Recorded calls, text messages and meetings with the targets of the investigation confirming the information supplied by informants;

- Public records checks denoting connections between the various defendants, and between the defendants and search locations; and

- Criminal history records denoting prior involvement in criminal activity in the places to be searched and which corroborated sources of information.

Moreover, all of this information was presented in a detailed and thorough manner that disclosed much of, if not essentially all, of the information obtained in this investigation. Considering that drug transactions were observed at many of the search locations, and that the search locations were often believed to be the various targets' residences, and that the affidavits demonstrated that the defendants had long-term connections to the locations, the judges correctly found that probable cause existed to search based on the reliable information that was not stale.   The

affidavits were also sworn to by long time law enforcement officers who possessed substantial training and experience to opine on the investigation and to provide sound basis for interpretation of the evidence. This cumulative evidence provided a substantial basis from which the agents reasonably believed that a search of the location would yield drug evidence, firearms, and evidence of the crimes being investigated.

      C.      The law enforcement agents relied in good faith on the search warrant.

The exclusionary rule is not automatically applied if the court finds a Fourth Amendment violation. United States v. Tracey, 597 F.3d 140, 150-51 (3d Cir. 2010) (citing Herring v. United States, 555 U.S. 135 (2009); United States v. Leon, 468 U.S. 897 (1984)). Evidence is only suppressed "if it can be said that the law enforcement officer had knowledge, or may be properly charged with knowledge, that the search was unconstitutional." Id. There is absolutely no evidence in this record to support a finding that the law enforcement agents could not reasonably have relied upon the judicial determination of probable cause justifying the challenged searches. Thus, even if this Court determines that there was not a substantial basis for the respective judge to find probable cause, the evidence recovered from a search is nonetheless admissible because the officers relied on the search warrant in good faith.

The Supreme Court has held that evidence seized pursuant to a search warrant issued without probable cause may be admissible if the warrant is facially valid and was relied upon in objective good faith. United States v. Leon, 468 U.S. 897, 922 (1984); United States v. Williams, 3 F.3d 69, 73-74 (3d Cir. 1993). See also Hodge, 246 F.3d at 305 (under the good faith exception, suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority"). "The test for whether the good faith

exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the … judge's authorization.'" Hodge, 246 F.3d at 307 (quoting Loy, 191 F.3d at 367 (quoting Leon, 468 U.S. at 922, n.23)). In Leon, the Supreme Court cautioned that "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness … for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." 468 U.S. at 922-23; accord Hodge, 246 F.3d at 308.

Here, the Philadelphia Police Detectives and the ATF agents reasonably relied on the search warrants approved by an Assistant District Attorney (as to the search of 5111 Funston) and an Assistant U.S. Attorney (as to all other remaining searches). See Tracy, 597 F.3d at 153 (reasonable officer would have confidence in warrant's validity after presenting it to, and having it approved by, a district attorney and a judge). As described above, the affidavits supporting the search warrants are not a "bare bones" affidavit, containing only conclusory statements or lacking factual support. See Leon, 468 U.S. at 926; see also discussion infra, at pp. 14-17. The affidavit submitted in connection with 5111 Funston Street contained detailed recent information derived from a source known to the police. That information also was corroborated by the nature of the underlying murder investigation. The affidavit was submitted to an Assistant District Attorney, who approved it, and authorized by a State Court Judge. The Philadelphia Police Officers executing that warrant therefore had a well-founded good faith belief in the belief on the sufficiency of the warrant. Similarly, the affidavit submitted by the ATF sets forth facts, over 151 pages, to show a years' long drug conspiracy that resulted in the commission of numerous acts of violent crime. The affidavit also set forth information to show

that the defendant, Gilliam, was a leader of a violent drug gang.   Moreover, the affidavit set forth in great detail a lengthy ATF investigation that demonstrated the defendant's role in the investigation, his connection to the subject location, and the basis to believe that evidence would be recovered from there.   United States Magistrate Judge Caracappa agreed determined that probable cause supported the search of the various locations, and it was objectively reasonable for the ATF to rely on that determination.   Hodge, 246 F.3d at 309; Williams, 3 F.3d at 74 (when judgment calls are required, officers should be able to rely on judge's determination of the law).   Id.   See also United States v. Francis, Crim. A. No. 90-41, 1990 WL 79414, at *2 (E.D. Pa. Jun. 8, 1990) (concluding that fruits of search were protected by good faith exception to exclusionary rule when agents and issuing judge acted in objective good faith).   As such, the motions to suppress should be denied.

The law of this circuit identifies the following four limited situations where "an officer's reliance on a warrant would not be reasonable and would not trigger the [good faith] exception:"

- Where the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit;

- Where the magistrate abandoned his or her judicial role and failed to perform his or her neutral and detached function;

- Where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

- Where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

Hodge, 246 F.3d at 308; see also Leon, 468 U.S. at 923.   None of these situations apply here.

Gilliam and Calloway suggest that the first criteria has been shown – that the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit. By this reply, it is clear that they are incorrect. Gilliam and Calloway argue no other factors that would obviate the detectives' proper reliance on the good faith of this approved warrant, nor is there evidence to support any of the four basis as delineated in <u>Hodge</u>. The affidavits in support of the search warrants, which included the facts referenced herein, were not lacking in indicia of probable cause to a degree that would render reliance upon it unreasonable. Moreover, as described above, the claimed reliance on false information or reckless disregard for the truth is unfounded, baseless, and counter to a correct understanding and representation of the facts in this case. As such, even were this Court to reevaluate the warrant and itself find that there was not a substantial basis for the determinations of probable cause, (which the government suggests is not the case), the good faith exception applies because it was objectively reasonable for the officers executing that warrant to rely, in good faith, on the issuing court's determinations.

For the foregoing reasons, the government respectfully requests that this Court deny defendants Gilliam and Calloway's motions to suppress physical evidence in its entirety.

## Conclusion

The government also requests that this Court deny defendants' motion to suppress. The defendants have failed to allege standing and thus their motions should be denied. Additionally, the defendants have failed to overcome their burden to prove that the search warrants were invalid. The warrants and applications are facially valid. The affidavits supporting the warrants set forth probable cause that a crime was being committed, and that specific evidence of that crime would be found in the places to be searched. No material

misstatements of fact, or material omissions, have been shown; thus, the defendants are not entitled to a <u>Franks</u> hearing, and this Court should summarily deny the defendants' motion to suppress.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

 s/ Jonathan B. Ortiz
Jonathan B. Ortiz
Seth Schlessinger
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 6th day of August, 2018, that this pleading was

electronically filed and thus served on defense counsel:

Benjamin B. Cooper
1500 Walnut Street
Twenty-Second Floor
Philadelphia, PA 19102
*Attorney for Bryant Calloway*

John J. McMahon, Jr.
139 North Croskey Street
Philadelphia, PA 19103
*Attorney for Sean Gilliam*

Nicholas V. Pinto
Law Office of Nicholas V. Pinto
Benjamin Franklin House
834 Chestnut Street, Suite 206
Philadelphia, PA 19107
*Attorney for Sean Wilson*

James Nechin
Law Office of James Nechin
1515 Market Street, Suite 1200, #519
Philadelphia, PA 19102
(484) 767-4336
*Attorney for Tyree Johnson*

 s/ Jonathan B. Ortiz
Jonathan B. Ortiz
Assistant United States Attorney