```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL No.: 17-Cr-518 |
| Plaintiff, | HONORABLE JUAN R. SANCHEZ |
| | (JRS) |
| v. | |
| BRYANT CALLOWAY | |
| SEAN GILLIAM | |
| SEAN WILSON | |
| TONIE HENDERSON | |
| TYREE JOHNSON | |

[DEFENDANT MOTION THE COURT FOR A FRANK'S
HEARING AND MOTION TO SUPPRESS EVIDENCE: DEFENDANT
ASK THE COURT FOR ORAL ARGUMENTS ON THE MERITS]

Defendant(s), Bryant Calloway, Sean Gilliam, Sean wilson, Tonie Henderson and Tyree Johnson, by and through their Counsel, hereby moves this Court, pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure and, Franks v Delaware, 483 U.S. 154 (1978), to enter an order directing that a Franks hearing be held and thereafter an order suppressing all evidence and items seized during the course of this investigation, while at the same time invalidating the factual statements set forth in the search and seizure warrants predicated on untruthful and misleading affidavits.

<u>STANDARD OF REVIEW</u>

The Defendant(s) aver the following in support thereof:

When the Fourth Amendment requires a factual showing of sufficient evidence to comprise probable cause, the assumption is that there will be a truthful recitation. Franks v. Delaware, 438 U.S. 154, 164-165 (1978). When a magistrate Judge is mislead by information in a affidavit that the affiant knew was false and

should have known was false except for recklessness regarding the truth, suppression can be the appropriate remedy. **United States v. Leon, 468 U.S. 897, 923 (1984).** Reckless disregard for the truth exists when the affiant must have had serious doubts as to the truth of the statements or had obvious reasons to doubt the accuracy of the information reported. Wilson v. Russo, 212 F.3d 781, 788 (3rd Cir. 2000).

Omissions from affidavits indicate a reckless disregard for the truth when an officer withholds facts that any reasonable person would assume a Judge would need to make the correct determination. Wilson v. Russo, 212 F.3d at 783. The sheer quantity of the misinformation put before the defendant(s) magistrate will require this Court to parse all the affidavits.

False information must be completely removed and cannot be replaced or corrected. Omitted information can be supplied by the Court from the "four Corners" of the affidavit. United States v. Yusuf, 461 F.3d 374, 383-384, (3rd Cir. 2006). The affidavit then has to be reviewed to determine whether probable cause to arrest still exists. During the final analysis the court must determine whether other information was omitted from the warrant.... that any reasonable person would have known that a Judge would want to know before deciding probable cause." Wilson v. Russo, 212 F.3d at 783.

The Third Circuit, keeping in mind that (1.) an officer contemplating an arrest is not free to disregard plainly exculpatory evidence, (standing by itself) suggest that probable cause exist, Reedy, 615 F.3d at 214 (quoting Wilson, 212 F. 3d at 790) (internal quotations omitted), and (2.) the determination of the affiants motivation and reconstruction of the warrant affidavit without material omissions or mistatements ensures that a Police Officer does not make unilateral decisions about materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the Magistrate/Judge of inculpatory evidence.

(2.)

Courts have routinely recognized a distinction between information provided by a informant and that provided by a law enforement Officer or other government agency... Informants are not presumed to be credible, and the government is generally required to show by the totality of the circumstances either that the informant has provided reliable information in the past or that the information has been corroborated through independant investigation. See., e.g., United States v. Ritter, 416 F.3d 256, 263 (3rd Cir. 2005).

Thus when predictive value of a tip goes untested before a warrant is issued--(Courts have found officers subsequent reliance on the warrant unreasonable).

## PROCEDURAL HISTORY/FACTS

In the Judicial system of the United States of America, there exist an age old adage that "Bad facts equal bad law"; well what this Federal Government has attempted to do is present bad facts while advocating bad law. Which our Jurisprudence doesn't work well from a platform of bad facts, assumptions and bad law. A corroboration of the facts supported by corresponding Statutory and Constitutional law is what the pillars of this great Country is founded on.

This investigation consisted of information and evidence sharing and other forms of collaborative cooperation existing both horizontally across local law enforcement agencies and vertically among local, state, and Federal agencies. So much so, that they even took the liberties of sharing each other's informant(s), evidence and warrants. Therefor to bring transparency to this investigation, the falsities in statements, critical omissions in affidavits and a corrupt Detective of PPD and his Confidential Informant, it is imperative we began our procedural history August 7, 2014.

In support of the Defendant(s) request, the defense avers the following:

## POINT (A.)

[Affidavit for April 7, 2013 5111 Funston st. warrant]

On August 7, 2013 Confidential Source Raymond Thompson was interrogated by Homicide Detective Ronald Dove in connection to a shooting incident that occurred at 500 Creighton Street Aug 5, 2014, leaving one man critically wounded in Philadelphia PA. [See., Attached, Hereto, Exhibit (A) Raymond Thompson Interrogation by Detective Ronald Dove].

Subsequent to this interrogation of Confidential Source Raymond Thompson, at 4:40 p.m. Homicide Detective Ronald Dove compiled a affidavit using Confidential Informant Raymond Thompson statement as the substantial basis for probable cause. This warrant was issued approximately 8 hours from the interrogation of 8:40 a.m., which clearly shows that no corroboration was done as to the information provided by Raymond Thompson. Nor was the reliability, veracity or basis of knowledge investigated of Raymond Thompson.

The search and seizure warrant was to raid 5111 Funston St. Philadelphia, PA 19139. [See., Attached, Hereto, Exhibit (B) Affidavit/Warrant- 5111 Funston St.]. The following items according to the property receipts of Detective James Burns No. #8056, Det. John Harkins No. #787, and Det. Ronald Dove #80003, are as follows: Taurus Pr99 9mm semi-auto handgun SER/129609 loaded with (1) magazine containing (15) live 9mm rounds and (1) live 9mm round in the chamber: (1) FAA Colt 45 Bounty Hunter revolver SER/T0788 loaded with (6) .45 long Colt live; (1) FEG P9R Semi automatic SER/R67501 loaded with (1) magazine containing (9) live 9mm rounds and (1) live 9mm round in the chamber; (1)cardboard box marked Remington 9mm containing foam tray with (21) live 9mm round. [See., Attached, Hereto, Exhibit (C) Property Receipt].

This evidence is secured in violation of Fourth amendment warrant requirement. In support thereof we must critically examine the affidavit that accompanined the warrant for probable cause. During Det. Ronald Dove interrogation of Raymond Thompson III, Mr. Thompson mentioned that the person who shot Brian littles is Brian Calloway also known as "Bigs". Mr. Thompson informed Det. Dove that Brian Calloway and himself was at the basketball court on

(4.)

51 st and Reno st on August 6, 2013 at 6 p.m. when Mr. Calloway "Bigs" told him personally that he did the shooting. [See., Supra, Exhibit (A) Raymond Thompson Interrogation].

This was a complete falsity that was told by Raymond Thompson to Detective Dove of Homicide. According to a May 6, 2015 Omnibus affidavit [paragraph 51], ATF Agent John Bowman reported that at the February 6, 2014 debriefing CS-1 Raymond Thompson stated that he was actually present on August 5, 2013 the day of the shooting before and after the incident occured. [See., attached, Hereto, Exhibit (D) Omnibus Affidavit May 6, 2015 paragraph [51].

Returning back now to the statement of CS-1 Raymond Thompson III on August 7, 2013 that became the substantial basis for probable cause to search and seize evidence from 5111 Funston st. must give us pause. This statement was completely fabricated on behalf of the CS-1 Raymond Thompson III. There was never a meeting on August 6, 2013 with Mr. Thompson and Mr. Calloway. We must pay attention to the language, and clearly Mr. Thompson says that Mr. Calloway told him yesterday when they were at the basketball court.

Furthermore CS-1 Mr. Thompson on February 6, 2014 being debriefed by ATF informs the interrogating agent that he was actually present on a day in August 2013 when Calloway declared to the group of men, i.e., (Sean Gilliam, Raymond Richburg, James MCneely and others), that he was going to speak with "Porter". Raymond Thompson III goes on to say that later that day Calloway returns back to the group and now says "Porter refuses to give him any of the drug Territory". Raymond Thompson says approximately 20-30 minutes later he heard gun shots and subsequently learned that Brian littles had been killed. None of these same dynamics was mentioned on August 7, 2013 to Det. Dove, which would have caused any Officer or Agent to question this CS-1 due to multiple names being brought into the equation. Where as even Raymond Thompson Must be looked at as a suspect now.

This Court must strike from the Complaint/Warrant substantial basis of August 7,2013 all statements relating to Raymond Thompson saying that he was told anything by Brian Calloway on August 6, 2013 at the basketball court on 51st and Reno st. This never happened,

(5.)

making the probable cause determination null and void. It is the obligation of local and Federal Law Enforcement Officers and Agents to conduct criminal investigations in a manner that does not violate the constitutionally protected rights of the person under investigation.

Moreover, police should be expected to collect and review evidence before seeking a warrant to invade a citizens person, and should not be permitted to rely on unsubstantiated hunches. United States v. Brown, 631 F.3d 638, 649 (3rd Cir. 2011). Detective Ronald Dove corroborated nothing that CS-1 Raymond Thompson made in statements on August 7, 2013. Mr. Thompson was present or wasn't he, either way he lied to Detective Dove, and in turn Detective Dove did no due diligence on this criminal statement.

It is important to acknowledge the 8 hour differential between Det. Dove securing this statement from Raymond Thompson III, and executing a search warrant before the ink dried on the face of the warrant. Simply put there was no time to corroborate anything. In determining probable cause, Courts have consistently recognized the value of corroboration by independant police work. Illinois v. Gates, 462, U.S. 213, 214, 103 S.Ct. 2317, 76 L.Ed 2d 527 (1983).

To determine the materiality of the mistatements and omissions, the Court exercise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause. Wilson, 212 F.3d at 789.

Detective Ronald Dove is not at liberty to argue Good Faith with no corroboration of Mr. Thompson III statements, especially at the time of this interrogation Mr. Thompson had been suspected of reasonable suspicion being discovered next to a well known drug area that is known for drug sales, at 5:10 a.m. and could have easily been seeking a exit out of his compounding troubles. Besides ATF stated that Mr. Thompson has been registered informant since 2012 and active.

## POINT (B.)

On February 6, 2014 after ATF debrief CS-1 Raymond Thompson III, these very same agents should have contacted the State PPD responsible for the August 7, 2013 5111 Funston St Raid that Raymond Thompson was the substantial basis for. They knew he had lied and ignored this material fact.

They allowed for this lie to continue on throughout the judicial process because it was in their interest. So instead of making light of this fact, they continued to ignore this lie that Raymond Thompson had made, just as they ignored the fact that in November approximately three months later, that Detective Ronald Dove who had secured this warrant for 5111 Funston St. had been fired for various investigative purposes and crimes surrounding a local homicide.

Clearly the ATF was aware of this fact. In January of 2015 Det. Ronald Dove was officially charged with (1)Flight to avoid apprehension/ trial punishment, (2) Conspiracy-Hinder Apprehension of Prosecution- Harbor or conceal, (3) Hinder app-prosec. Harbor or conceal,(4) Obstruct Admin law other Gov't function, (5) unsworn falsification to authorities, (6) Tamper with fabricate physical evidence, and (7) Conspiracy. [See., Attached, Hereto, Exhibit (E.) Detective Ronald Dove Docket].

Also there is nothing in discovery that would provide the defendant(s) with the requisite information to how this debriefing between the ATF and Raymond Thompson III came about on February 6, 2014. Which this information is material to this case knowing that the Federal Government not only introduced Det. Ronald Dove physical evidence and informant from which the 5111 Funston st. raid was predicated on into Federal Jurisdiction, knowing that Detective Dove pled guilty to the charges on April 26, 2017. They also used this tainted evidence of Detective Ronald Dove imputed misconduct in their substantial basis for probable cause within the charges before grand jury. This secured their indictment. Just as they allowed Raymond Thompson to testify at grand jury after having indicted Mr. Thompson on June 21, 2017 for lying to law enforcement just as

(7.)

Detective Ronald Dove had been charged with on April 26, 2017.
[See., Attached, Hereto, Exibit (F) Indictment 17-Cr-518, evidence
from 5111 Funston St. executed warrant], [Also See., Attached, Hereto,
Exhibit (G) Raymond Thompson Docket insert [1].]


## POINT (C)

[Omnibus Affidavit of may 6, 2015 for
search and seizure warrants on homes and vehicles]

When the Court review the Omnibus affidavit for search and
seizure warrants for homes and vehicles, up until paragraph [47]
is all individualized PPD prior arrest having no connections to
the current situation. Also, these prior convictions show no proof
of evidence supporting a complex investigative conspiracy. In
fact this prosecutorial ploy actually shows a diametrical opposite
of what this prosecution intended for it to show.

Refer to page (7.) (B.) Targets of search warrants for the
Gilliam/Calloway Organization.
This Federal Prosecution speaks of a Sean Gilliam 37 and prior
charges of aggravated assault dating back to 1996, however the
Gilliam/Calloway gang supposedly begins in the mid 2000's according
to this same Omnibus Affidavit. [See., Attached, Hereto, Exhibit
(D) Paragraph [47].]. Clearly this is a strong prejudice before
a grand jury which 1996 is totally irrelevant in the mid 2000's.
Furthermore, no Court could correlate these prior offenses having
relation to a non existing conspiracy within a 2017 indictment.

This illogical tactical scheme of bias and prejudice is
consistent throughout this criminal prosecution of the defendant(s).
We see this same pattern further down in the affidavit with Allen
Wilson who is 42 years of age at the time that this affidavit is
compiled. His aggravated assault is a 1990 conviction, which is
25 years ago from the date this affidavit was constrcted. Also
please keep in mind that 25 years ago most of the defendant's

(8.)

aren't conceived yet.

     This prosecutor created a conspiracy out of neighborhood friends who may of grew up in the very same communities, having priors out of the same environment. The Federal Prosecution injected these prior convictions into their substantial basis for warrant applications, and gave the grand jury this false idea of a conspiracy to commit criminal offenses. When in fact it was Detective Ronald Dove who was commiting crimes and yet the Federal prosecution still trust his evidence.

     Please note that on the face of the indictment the Federal Prosecution mentions that this supposed conspiracy started from in or about 2009, to on or about May 7, 2015. This is clear proof that the prior convictions being placed in the affidavits for probable cause were tactical and methodically used to create prejudice and bias to obtain an indictment.

     The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done... She may prosecute with earnestness and vigor... Indeed, He/She should do so. But, while He/She may strike hard blows, She/He is not at liberty to strike foul ones... In these circumstances, prejudice to the cause of the accused is so highly probable that we are not justified in pretending its nonexistence. [United States v. Enrique Faurtino Aguilar Noriega, 831 F.Supp 2d 1202.]

     Furthermore this Court only need to scrutinize the language used in this affidavit and all other aafidavits to describe the veracity and reliability of CS-1 Raymond Thompson, to know this investigation was based on fabrications, falsities and severe omissions. Which there is no time where the Federal Prosecution or PPD can show a corroboration of Raymond Thompson verbal particulars prior to Fourth Amendment invasions. What they have

is a Confidential Source who was unreliable and not once corroborated by the Federal Agents prior to, which the Fourth Amendment warrant requirement demands. Also the Supreme Court precedent of Illinois v. Gates commands corroborationof reliability when relying on an informant for your probable cause analysis.

7. Even in this Omnibus affidavit the Federal Agent contradict the CS-1 reliability.

Refer to Omnibus Affidavit Exhibit (D) paragraph [47]

"In or about 2014, investigators began to debrief a confidential source, herein referenced to as confidential source (CS-1), who possesses direct, first hand knowledge of both the Porter and Gilliam/Calloway organizations. CS-1 is a registered confidential informant with ATF and has been since approximately July of 2012. CS-1 has made statements against his penal interest and has provided information that has been corroborated by police reports, BMV records, housing, records, consensual recorded telephone calls, surveillance, call detail records, and controlled purchases of both narcotics and firearm. CS-1 information has proven reliable throughout the time he has been an informant with ATF investigation. When investigators began to interview CS-1 regarding Mill-Creek, CS-1 advised investigators that both organizations have controlled the drug turf in Mill Creek since the early to mid-2000's. The many PPD arrests described above corroborated this information. Additionally CS-1 informed investigators of several recent shootings that initiated a drug turf war between the Porter and Gilliam/Calloway organizations".

This statement by the Federal ATF directly contradict paragraph (51) where the same investigator stated that Mr. Thompson didn't inform PPD of his presence before and after the murder. So in essnce Mr. Thompson lied in his statement on August 7, 2013, in which Detective Ronald Dove (Convicted Felon) based his search and seizure warrant on, i.e., Raymond Thompson III fabricated statement.

The PPD prior convictions doesn't corroborate anything but the fact that this is the area where these gentleman have grown up there entire lives, which explains prior charges in this vacinity.

(10)

In fact when someone is accused of a crime, majority of the time the crime takes place in the environment that the accused is accustom to. So what the PPD and ATF have with respect to the defendant(s) priors is innocent existing circumstances that are in all honesty predictable.

The obligation of these local Law Enforcement Officers and Federal Agents is to conduct criminal investigations in a manner that does not violate the constitutionally protected rights of the person(s) under investigation. Information about the informant's credibility or potential bias is crucial. Raymond Thompson should have been corroborated. The Affidavits in this case omitted very crucial information relating to this Confidential Source and corrupt Detective Ronald Dove. With all due respect to this Court and to the Federal Prosecutors who stand for Justice in earnest, one would have to be on the verge of insanity to walk into a courtroom and offer evidence that is coming from ex. Detective turned convicted felon Ronald Dove and ask the Honorable Judge Sanchez who is by far one of the premier Constitutional Judges of our time, to look the other way and pretend to not see the proverbial elephant in the room, drinking from the prosecution fountain of half-truths, falsities and omissions.

All of the affidavits in question in the matter before us have a critical omission which by itself render the warrants invalid. Informants are not presumed to be credible, and the government is generally required to show by the totality of the circumstances, either that the informant has provided reliable information in the past, or that the informant has been corroborated through independant investigation. United States v. Ritter, 416 F.3d 256, 263 (3rd Cir. 2005).

## POINT (D.)

[October 11, 20117 affidavit for Authorization to obtain location data concerning cellular telephones]

In paragraph (7) Special Agent Jason Santos again makes references to the CS-1 information routinely being proven reliable throughout the investigation and other investigations. Agent Santos goes on to say that he is aware of no reason to question the reliability of the information provided by CS-1.

This recurring statement that seems to appear in all of the affidavits that accompanied the various warrants couldn't be farther from the truth. First off Raymond Thompson lide when he had initial contact with Detective Ronald Dove that prompted the raid in 2013 at 5111 Funston st. This is made clear in February of 2014 at the ATF headquarters debriefing of Raymond Thompson.

On or about August 22, 2016 Raymond Thompson lied to law enforcement authorities in a staged buy he orchestrated relating to a stolen cellular phone that was part of a armed robbery. Raymond Thompson had claimed he called met and purchased the stolen cellular telephone from a person#1 in exchange for $200 in United States currency, when in fact Mr. Thompson knew this incident never took place.

Raymond Thompson was charged on August 22, 2016 with violation of Title 18 U.S.C. Sect 1001 (a)(2), See., Attached, Hereto, Exhibit (G.) Raymond Thompson Indictment/letter attached. Clearly any Judge would have deemed this information vital to not one but to all of the supporting affidavits in 2017. Especially when the Court consider that the arrest warrant for these defendant(s) were based on grand jury testimony in September of 2017 in which Raymond Thompson appeared. [See., attached, Hereto, Exhibit (H) Affidavit October 11, 2017 paragraph (7) pg.4].

So these particular ATF agents not only was cognizant that Raymond Thompson was unreliable but also that Mr. Thompson had been charged by the same ATF agents for lying to law enforcement with respect to staged buys of his manufacturing. At no time did ATF Agents apply the slightest efforts of corroboration despite events casting doubts upon Raymond Thompson all together.

It has long been settled law that unreasonable reliance upon an unreliable informant is inadequate for a probable cause determination and is therefore unconstitutional when such reliance is the basis for probable cause to arrest. See., Draper v. United States, 358 U.S. 307, 312-3, 79 S.Ct. 329, 3L. Ed. 2d 327 (1959):Gates, 462 U.S. at 241-2: U.S. v. King, 327 F.3d at 742. Relying upon a warrant obtained by false4 or miusleading statements has been unconstitutional. Sykes, 625 F.3d at 305; Voyticky, 412 F.3d at 677; Vakilian, 335 F.3d at 517.

To solidify the defense argument that the ATF Agents were clearly aware of the illegal activity of CI-1 Raymond Thompson in terms of staged buys, on July 22, 2014; on July 22, 2014 ATF assumed that Raymond Thompson had staged a buy with James Wilson and was supposedly having the target meet him at a specific location. Now when CI-1 gets to location, it isn't James Wilson who is meeting him. It is in fact someone totally unknown to the agents but not to Mr. Raymond Thompson. It is imperative that this video footage is analyzed critically. See., Attached, Hereto, Exhibit (H) Disk #5 ATF Buy July 22, 2014, Record 233 Exhibit E-46, Record 234 Exhibit E-45, Record 235 Exhibit E-44.

Notice when CI-1 notice a certain unknown person appear at the entrance into the bar, he immediately refers to him with "J.T. sent you"; the problem with this statement is that he was supposedly speaking to J.T. (James Wilson) in the presence of the agents. The very last call he makes outside the bar and he pretends that he is speaking with J.T. again, reiterating was he still coming. Never once did anyone inform this CI-1 that J.T (James Wilson) was sending someone nor was he ever speaking to James Wilson known as J.T.

To support this argument further, when the so called transaction is done and the CI-1 calls the ATF agents back, he says that someone came into the bar and asked him was he there for J.T., this never happened. In fact the unidentified man never utters a word besides "yeah". Also these agents never charged no one with this buy yet

(13)

you have $2,500 of government funds uncounted for. These
agents Knew Raymond Thompson was dirty and continued to use
him throughout the process. This Court should recognize that there
is no reason in the four corners of neither affidavit to find that
this informant Raymond Thompson was competent, reliable, trust-
worthy or has previously been used in any capacity where his
character would be observed or that his information was otherwise
corroborated. These omissions of false fabricated staged buys
were purposefully omitted and shows a clear reckless indifference
to the truth.

Also the only eye witness to these buys is the informant.
Not one time do you clearly see on video drugs being passed for
currency. The purpose of video surveillance is to record the
actual transaction contemporaneously to the events as they occur,
anything counter to this can not with any particular certainty be
said to have occurred, i.e., narcotics transactions according to
the CS-1 Raymond Thompson III.

Furthermore these affidavits blatantly omitted that the
evidence secured from 5111 Funston st. was predicated on an investigation
by none other than Detective Ronald Dove. The warrant that was
secured was done by Det. Dove who is now a convicted Felon. Also
these convictions afforded to Detective Ronald Dove pre date a
grand jury indictment that carried Det. Dove evidence into the
substantial basis for probable cause. Ultimately rendering arrest
warrants for the defendant(s).This omission alone Brightly highlight
the need for suppression of all evidence in this matter.

The web of falsehoods and reckless diregard for the truth,
infects the very core of Justice and what our United States
Constitution represents and guarantees to every natural born citizen
of this great country, e.g., "EQUAL PROTECTION UNDER THE COLOR OF
LAW".

It would be nothing less than sheer torture of the english
language to suggest that after a careful critical analytical analysis

(14.)

of the terms "Imputed Misconduct", that we should not apply this
to Detective Dove evidence and everything that flowed from that
poisonous tree.

In Weeks v. United states, 232 U.S. 383 (1914), the S.Ct. applied
the exclusionary rule to prohibit the introduction in federal
proceeding of evidence seized in violation of the Fourth Amendment.
The Court tied the exclusionary rule directly to the substantive
protections of the Fourth Amendment reasoning that if evidence can
thus be unlawfully seized and held and used in evidence against
a citizen accused of an offense, the protection of the Fourth Amendment
declaring hi/her right to be secure against such searches and seizures
is of no value, and, so far as those thus placed are concerned, might
as well be stricken from the Constitution.Id.,at 393:see also
Silverthorne Lumber Co v. United States, 251 U.S. 385, 392 (1920).

The exclusionary rule reaches not only primary evidence obtained
as a direct result of an illegal search and seizure, but also evidence
later discovered and found to be derivative of an illegality or fruit
of the poisonous tree. See., Wong Sun v. United States, 371 U.S.
471 (1963).

"Courts which sit under our Constitution cannot and will not be
made party to lawless invasions of the Constitutional rights of citizens
by permitting unhindered governmental use of the fruits of such invasions."
See., Terry v. Ohio, 392 U.S. 1,13 (1968).

## MEMORANDUM OF LAW

The defendant(s) argue that the August 7, 2013 warrant for
5111 Funston st, who affidavit was submitted by Detective Dove,
provided a insufficient basis for the search and seizure warrant
because it (1) said nothing about the informant credibility, (2)
showed absolutely no corroboration, (3) lacked detail. The complete
omission of Raymond Thompson credibility is insurmountable, and
must undermine the deference otherwise given to a magistrate/Judge

decision to issue a search warrant. See., United States v. Glover, 755 F.3d 811 (7th Cir 2014).

An informants creditability is highly important. Case in point, in United States v Bell, 585 F.3d 1045, 1050 (7th Cir. 2009) the 7th Circuit Court of Appeals found that the failure to establish the informant's reliability raised the concern that the tip was provided to harass or remove a rival.

Given Raymond Thompson criminal history and how the ATF mentions that Mr. Thompson has been a registered confidential informant with ATF since 2012 and have recently been indicted for lying to law enforcement about staged buys should of gave cause for alarm. Raymond Thompson basis of knowledge, reliability, and veracity are all highly relevant. Gates, 462 U.S. 236.

It has long been settled law that unreasonable reliance upon an unreliable informant is inadequate for a probable cause determination and is therefore unconstitutional when such reliance is the basis for probable cause to arrest. Draper v. United States, 358 U.S. 307 312-13, 79 S.Ct. 329, 3 L.Ed. 2d 327 (1959). Relying upon a warrant obtained by false or misleading statements has been unconstitutional. Sykes, 625 F.3d at 305: Voyticky, 412 F.3d at 677:

## CONCLUSION

The warrants for August 7, 2013 , May 6, 2015, Oct 11, 2017 and Oct 18, 2017 should be suppressed pursuant to Franks v. Delaware because the affidavit's provided to the issuing Judge/Magistrate contained false and/or omitted information that materially affected the determination of probale cause. When the offending information is removed, and egregious omissions properly placed therein, the remaining cause is constitutionally insufficient for searches and seizures of property and arrest, then the warrants are invalid.

Date:

Respectfully Submitted